RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2596-14T2

STATE OF NEW JERSEY
IN THE INTEREST OF I.P.,

 A Juvenile.
__________________________

 Submitted October 18, 2016 – Decided March 1, 2017

 Before Judges Rothstadt and Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Docket No. FJ-20-
 1128-14.

 Joseph E. Krakora, Public Defender, attorney
 for appellant I.P. (Michele A. Adubato,
 Designated Counsel, on the brief).

 Grace H. Park, Acting Union County Prosecutor,
 attorney for respondent State of New Jersey
 (Milton S. Leibowitz, Special Deputy Attorney
 General/Acting Assistant Prosecutor, of
 counsel and on the brief).

PER CURIAM

 I.P.1 appeals from an adjudication of delinquency for acts

which, if committed by an adult, would constitute second-degree

1
 Pursuant to Rule 1:38-3(d), we use initials to protect the
identity of the juvenile and minors involved in these proceedings.
robbery, N.J.S.A. 2C:15-1(a). I.P. was sentenced to a one-year

probationary term along with conditions.

 On appeal, I.P. raises the following arguments:

 POINT I

 THE VICTIM'S IDENTIFICATION OF THE JUVENILE
 MADE UNDER THE IMPERMISSIBLY SUGGESTIVE
 PROCEDURES UTILIZED BY SCHOOL PERSONNEL SHOULD
 HAVE BEEN SUPPRESSED.

 POINT II

 THE ADJUDICATION OF DELINQUENCY OF I.P. FOR
 SECOND[-]DEGREE ROBBERY WAS NOT SUPPORTED BY
 SUFFICIENT CREDIBLE EVIDENCE AND MUST BE
 VACATED.

After reviewing the record in light of the contentions advanced

on appeal, we affirm.

 I.

 On the first day of trial, Judge Robert Kirsch conducted an

evidentiary hearing on I.P's Wade2 motion to suppress the victim,

J.G.'s out-of-court identification of I.P. on the basis that it

was impermissibly suggestive. The State presented testimony from

J.G. and Mario Mendo, a security guard at the school J.G. attended.

The defense presented testimony from the school's vice-principal,

Wilnes Jilus.

2
 United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.
2d 1149 (1967).

 2 A-2596-14T2
 At approximately 7:30 a.m. on May 2, 2014, while J.G., then

seventeen years old, was walking to school, two high school-age

males on bicycles rode past him and then returned to confront him.

J.G. immediately recognized one of them, who was standing less

than a foot away in front of J.G., as a former classmate who sat

in front of him in English class the previous 2012-2013 school

year. However, J.G. did not know his name. The former classmate

asked J.G. if he had his school-issued iPad, and J.G. handed over

his book bag, which the other male took and pulled out the iPad.

When the former classmate demanded the device's password, J.G.

initially gave him an incorrect password, but J.G. revealed the

correct password after he threatened to punch J.G. After the iPad

was unlocked, the two males rode away on their bikes. As J.G. ran

to school, he briefly turned around and saw his former classmate

shake hands with a current schoolmate, whose name he also did not

know.

 Upon arriving at school, J.G. reported that a former classmate

stole his iPad. J.G. did not know his name, but mentioned that

I.W., a current student at the school, might know him because she

sat next to him in their English class and constantly had arguments

with him. I.W. was summoned to Jilus' office, and when questioned,

she did not remember who sat next to her in the English class.

 3 A-2596-14T2
 J.G. next recalled that right after the incident he saw the

individual who robbed him shake hands with a current student, who

attended J.G.'s school. J.G. was then asked to look through a

binder containing the school's student photo identification cards

(student IDs), and identified T.H. as the student who greeted his

assailant. T.H. was brought to Jilus' office, and acknowledged

to Mendo that when he walked to school that morning he had spoken

to someone he only knew as Loco. However, I.W. subsequently told

Mendo that Loco's first name was I. J.G. was not present during

Mendo's conversations with I.W. or T.H.

 With that information, Mendo surmised that Loco's real full

name was I.P., and retrieved a student ID binder to show J.G. a

picture of I.P. Mendo flipped through the binder that contained

between ten to twelve student IDs per page, until he stopped on a

page, and J.G. immediately identified I.P. with "one-hundred-

percent" certainty as the person who robbed him. The police were

notified, and later that day, J.G. confirmed his identification

of I.P. when a detective showed J.G. the same student ID that he

picked out earlier.

 At the hearing, J.G. identified I.P. in-court and confirmed

his out-of-court identification of I.P. as the individual who

robbed him. J.G. testified that, at the time of the five-minute

 4 A-2596-14T2
long incident, I.P. had on "a grey crew neck and [wore his hair

in] short little dreads, [which were] sticking out[.]"

 Jilus' testimony for the defense established that the

school's records revealed J.G. and I.P. were in English class

together for only eight days during the fall of the 2012-2013

school year. Jilus also stated that after J.G. described the

former student who robbed him, he believed I.P. was the culprit,

whereby he showed J.G. only I.P.'s student ID. J.G. then

identified I.P. as the person who robbed him.

 Following the parties' summation, Judge Kirsch rendered an

oral decision denying I.P.'s Wade motion. The decision was

confirmed in a comprehensive written Statement of Reasons issued

on July 24, 2014. After analyzing the admissibility of out-of-

court identifications as set forth in State v. Henderson, 208 N.J.

208 (2011), and State v. Chen, 208 N.J. 307 (2011), the judge

determined that the school officials who conducted the

identification procedures "are not 'government' or 'police' actors

for the purpose of determining the admissibility of the

identification evidence." He further reasoned that the conduct

by Jilus and Mendo, as private actors was "not optimal" but they

did not show I.P.'s student ID to J.G. under "highly suggestive

circumstances" such that the identification was unreliable, and

 5 A-2596-14T2
the kind of harm that is guarded against by Chen, supra, 208 N.J.

at 327.

 Nevertheless, the judge still decided to conduct an

evidentiary hearing to determine the reliability of J.G.'s

identification of I.P. After assessing the system and estimator

variables prescribed in Henderson, supra, 208 N.J. at 288-89, the

judge determined that J.G.'s identification of I.P. was reliable.

In particular, he found that: J.G. had ample opportunity to observe

I.P. as he stood a foot away and did not shield his appearance

during the five-minute robbery; J.G. immediately recognized I.P.

as a former classmate despite not knowing his name; and J.G.

identified I.P. with one hundred percent certainty. Citing State

v. Herrera, 187 N.J. 493, 509 (2006), the judge found that J.G.'s

"prior familiarity with [I.P.] was a crucial factor in establishing

the overall reliability of the identification." Thus, Judge Kirsch

decided that the identification was admissible because I.P. did

not satisfy his burden of proving there was a substantial

likelihood of irreparable misidentification.

 Immediately after the Wade motion was denied, the trial

commenced and continued on two additional hearing dates. Testimony

presented by the State's witnesses, J.G., Mendo, and Jilus, need

not be summarized as it mirrored the testimony they provided during

the motion hearing. T.H., who did not testify at the hearing but

 6 A-2596-14T2
did for the State at trial, bolstered the State's evidence against

I.P. by stating that he greeted I.P. while walking to school the

morning of the incident.

 I.P. did not testify, but presented an alibi defense through

the testimony of his mother and thirteen-year-old sister, both of

whom claimed that I.P. was home when the alleged robbery occurred

at 7:30 a.m. They stated, respectively, that on the morning in

question, I.P. was home, having just woken up, when the mother,

sister, and I.P.'s two brothers left the house at 7:35 a.m. or

7:40 a.m. to go work or school. The mother testified that normally

the children would have left the house twenty minutes earlier to

go to school, but she woke-up almost two hours late that particular

day. The mother also claimed that at 8:15 a.m. or 8:20 a.m., she

spoke to I.P. on the home's telephone landline when she called

from the restaurant she owned and operated. She further testified

that after she received a call later that morning from the

detective investigating the robbery, she called I.P. at home and

he told her that he had been home all morning. I.P.'s mother and

sister also claimed that at the time, he did not wear his hair in

"dreads."

 Also testifying on behalf of I.P. was his former probation

officer who supervised him prior to the incident. She stated that

 7 A-2596-14T2
when she saw I.P. a month before the robbery, his hair was neither

in dreadlocks nor in short braids, but was "close to his head."

 On August 5, 2015, Judge Kirsch issued an order and written

decision adjudicating I.P. of delinquency for acts which, if

committed by an adult, would constitute second-degree robbery. He

found that the State's witnesses gave credible, compelling, and

corroborating testimony regarding the identification of I.P. as

one of individuals who robbed J.G. In particular, the judge noted

that based upon J.G.'s specific recall of details that his iPad

was taken from him with threats of bodily injury; he was a "candid

and credible witness, and accord[ed] his testimony great weight."

He also stressed that T.H., who bore no animus towards I.P. and

had no motive to implicate I.P., gave credible testimony confirming

J.G.'s contention that T.H. shook hands with I.P. moments after

the robbery took place.

 With respect to I.P.'s witnesses, the judge did not assign

much credibility to their testimony concerning I.G.'s hairstyle

and I.G.'s whereabouts the morning of the robbery. The probation

officer was not able to specify I.P.'s hairstyle on the date of

the robbery. I.P.'s mother and sister, unlike the State's

witnesses who corroborated J.G.'s testimony, had a motive for not

telling the truth – they did not want I.P. adjudicated delinquent.

Moreover, the judge found that their "testimony was not credible

 8 A-2596-14T2
given the hectic nature of their morning routine, especially while

running late[,]" and significantly, they could not account for

what I.P. did after they left him in the house to go to school or

work.

 On the day the written decision was filed, and after the

parties reviewed it, I.P. made an oral motion for a new trial

pursuant to Rule 3:20-1, arguing that the court's ruling was

against the weight of the evidence. Judge Kirsch denied the motion

for the reasons he found I.P delinquent in his written decision.

Subsequently, on August 20, 2015, I.P. was sentenced to twelve

months of probation conditioned on completion of the Voorhees

Residential Program.

 II.

 On appeal, I.P. contends Judge Kirsch erred in not suppressing

J.G.'s out-of-court identification because the school officials'

showing J.G. a single photo, without having him view other student

IDs, was impermissibly suggestive. He asserts the police

compounded the situation by also showing the one photo, rather

than conducting an independent identification process in

accordance with the Attorney General Guidelines.3 I.P. argues

3
 Although not specifically cited, I.P. was apparently referring
to Attorney General Guidelines for Preparing and Conducting Photo
and Live Lineup Identification Procedures (April 18, 2001),
http://www.state.nj.us/lps/dcj/agguide/photoid.pdf .

 9 A-2596-14T2
that, since identification was the key issue in the case, admitting

the "[out-of-court] identification . . . mandates reversal of the

adjudication of juvenile delinquency." In addition, I.P. argues

the judge's adjudication is not supported by sufficient credible

evidence and he should have granted his motion for a new trial.

He cites the lack of evidence corroborating that he robbed J.G.,

the credibility of his alibi witnesses, and the impermissibly

suggestive identification procedure.

 We have considered I.P.'s contentions in light of the record

and applicable legal principles, and conclude they are without

sufficient merit to warrant a discussion in a written opinion. R.

2:11-3(e)(2). We discern no abuse of discretion in the admission

of the out-of-court identification of I.P., and conclude that the

adjudication of delinquency was supported by credible evidence.

We affirm substantially for the reasons expressed by Judge Kirsch

in his thorough written decisions.

 Affirmed.

 10 A-2596-14T2